UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Paul G. Burke,<br><br>   Plaintiff,<br><br>v.<br><br>DJO, LLC,<br>DJO, Inc.,<br><br>McKinley Medical LLC,<br>Moog Inc.,<br>Curlin Medical, Inc.,<br><br>The Broe Companies, Inc., and<br>Pat Broe,<br><br>   Defendants. | File No. 10-cv-2209 (JRT/TNL)<br><br><br><br>**ORDER<br>OPINION** |

Lindsey M. Craig NA; Richard A. Lockridge, Nathan D. Prosser, Yvonne M. Flaherty, Lockridge Grindal Nauen PLLP, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401; Brian D. Ketterer, Elisha N. Hawk, Jessica H. Meeder, Justin A. Browne, Robert K. Jenner, Janet, Jenner & Suggs, LLC, 1829 Reisterstown Road, Suite 320, Baltimore, MD 21208; David B. Allen, Gregory L. Laker, Irwin B. Levin, Jeff S. Gibson, Jeffrey A. Hammond, Cohen & Malad, LLP, One Indiana Square, Suite 1400, Indianapolis, IN 46204; Thomas G. Wilson, Wilson Law Offices, PLLC, 120 Capitol Street, Charleston, WV 25301 (for Plaintiff);

Bradley J. Lindeman, Elizabeth Snyder Poeschl, Jon R. Russell, Meagher & Geer, PLLP, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402 (for Defendants DJO, LLC and DJO, Inc.);

Daniella D. DaCunzo, Eric H. Lindenman, Harris Beach, PLLC, 100 Wall Street, New York, NY 10005; Jerry W. Blackwell, Karen M. Bohaty, Michael R. Moline, Blackwell Burke PA, 431 South Seventh Street, Suite 2500, Minneapolis, MN 55415 (for Defendants McKinley Medical LLC, Moog Inc., and Curlin Medical, Inc.);

Heidi A. Chesley, Thomas B. Quinn, Gordon & Rees, LLP, 555 Seventeenth Street, Suite 3400, Denver, CO 80202; Jonathan P. Norrie, Stephen O. Plunkett, Bassford Remele, PA, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402-3707 (for Defendants The Broe Companies, Inc. and Pat Broe).

This matter is before the Court on two separate motions.  The first, Plaintiff's Motion for leave to Assert a Claim for Punitive Damages Against DJO Global, Inc.; DJO, LLC; McKinley Medical LLC; Curlin Medical, Inc.; Moog Inc.; the Broe Companies, Inc.; and Pat Broe (Docket No. 68), was heard on November 8, 2011.  Jessica H. Meeder and Yvonne M. Flaherty appeared on behalf of Plaintiff; Bradley J. Lindeman appeared on behalf of Defendants DJO, LLC and DJO, Inc. (collectively, the "DJO Defendants"); Corey L. Gordon, of Blackwell Burke, PA, appeared on behalf of Defendants McKinley Medical LLC, Moog Inc., and Curlin Medical, Inc. (collectively, the "McKinley-Moog-Curlin Defendants"); and Ellie Vilendrer, of Bassford Remele, PA, appeared on behalf of Defendants Broe Companies, Inc. and Pat Broe (collectively, the "Broe Defendants").  (Docket No. 86.)

The second, Plaintiff's Motion for Leave to Assert a Claim Under Massachusetts's Unfair and Deceptive Trade Practices Statute, M.G.L.A.C. 93A (Docket No. 88), was heard on December 14, 2011.  (Docket No. 98.)  Jessica H. Meeder appeared on behalf of Plaintiff; Bradley J. Lindeman appeared on behalf of the DJO Defendants; and Karen M. Bohaty appeared on behalf of the McKinley-Moog-Curlin Defendants.  (Docket No. 98.)

**I.**

Plaintiff Paul G. Burke brings this suit for injuries arising out of a pain pump implanted in his right shoulder following arthroscopic surgery in 2004.  (Docket No. 39 (Am. Compl.), ¶¶19-20, 25.)  Pain pumps "deliver, by way of a catheter, continuous doses of pain relief anesthetic for several days directly into the shoulder." (Am. Compl., ¶ 1.)  Plaintiff is a resident of Massachusetts, consulted with an orthopedic surgeon in Massachusetts, and underwent surgery and implantation of the pain pump in Massachusetts.  (Am. Compl., ¶¶ 19-20.)

The DJO, McKinley-Moog-Curlin, and Broe Defendants are, or were, involved in the testing, manufacturing, labeling, marketing, distributing, promoting, and selling of pain pumps. (*See* Am. Compl., ¶¶ 9-14.)  As a group, Defendants are incorporated in Delaware, Colorado, and New York, and have principle places of business located in California, Colorado, and New York. (Am. Compl., ¶¶ 9-13.)

## II.

Plaintiff has moved for leave to amend his Amended Complaint in order to assert a claim for punitive damages. (Docket No. 68.)  The DJO and McKinley-Moog-Curlin Defendants oppose the motion. (*See* Docket Nos. 78 (DJO Mem. in Opp'n), 81 (McMC Mem. in Opp'n).)

Plaintiff and the McKinley-Moog-Curlin Defendants argue their respective positions with reference to Minnesota's deliberate-disregard standard as set forth in Minn. Stat. § 549.20.  *See* Minn. Stat. § 549.20, subd. 1(a) ("Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others.").  Plaintiff asserts that he has made a prima facie case, entitling him to allege punitive damages. (*See* Docket No. 69 (Mem. in Supp.) at 14-25.)  *See Olson v. Snap Products, Inc.*, 29 F. Supp.2d 1027, 1034 (D. Minn. 1998) ("[A] plaintiff who seeks to assert a punitive damage claim must first obtain leave of the court to do so, based upon a *prima facie* showing of entitlement.").  The McKinley-Moog-Curlin Defendants contend that (1) Plaintiff's prima facie showing relies on inadmissible evidence; (2) even if Plaintiff's evidence were admissible, it fails to demonstrate the McKinley-Moog-Curlin Defendants acted with deliberate disregard for Plaintiff's safety; and (3) Defendants Moog and Curlin are not liable as successors to McKinley for any alleged wrongdoing of McKinley and, in any event, such successor liability extends only to compensatory damages, not punitive damages. (McMC Mem. in Opp'n at 1-3.)

3

The DJO Defendants assert that, while Plaintiff was required to follow the amendment procedure outlined in Minn. Stat. § 549.191 (requiring a party to move "to amend the pleadings to claim punitive damages"), the availability of punitive damages is governed by Massachusetts law because Plaintiff is a resident of Massachusetts and all relevant events took place in Massachusetts. (DJO Mem. in Opp'n at 1.) The DJO Defendants argue that because punitive damages are not permitted under Massachusetts law unless authorized by statute and Plaintiff has not pleaded any Massachusetts statutory claims authorizing an award of punitive damages, "Plaintiff cannot show by clear and convincing evidence that he is entitled to punitive damages." (DJO Mem. in Opp'n at 1-2.)

### III.

"A district court sitting in diversity applies the law, including the choice-of-law rules, of the state in which it sits." *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007); *see Burks v. Abbott Labs.*, No. 08-3414 (JRT/JSM), 639 F. Supp.2d 1006, 1011 (D. Minn. 2009). Under Minnesota law, "[w]hen a party asserts that a case brought in Minnesota may have a significant relationship to more than one state, the court must consider whether there is a choice of law issue." *Christian v. Birch*, 763 N.W.2d 50, 55 (Minn. App. 2009). Because the DJO Defendants have raised the issue, this Court must begin by considering whether Minnesota or Massachusetts law governs Plaintiff's request for punitive damages.[1] *See BBSerCo, Inc. v. Metriz Co.*, 324 F.3d 955, 960 n.3 (8th Cir. 2003) (law of forum state governs by default when neither party contests its application); *see also Christian*, 763 N.W.2d at 55 ("Where a conflict of law question has not been raised, Minnesota law will govern." (quotation omitted)).

---

[1] Given the manner in which the choice-of-law issue was raised, the Court confines its analysis to the issue of punitive damages.

4

When engaging in a choice-of-law analysis, Minnesota courts are first required to consider "whether the choice of one state's law over another creates an actual conflict." *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn. 1994); *see In re Levaquin Prods. Liab. Litig.*, No. 08-5743 (JRT), 2010 WL 7852346, at *6 (D. Minn. Nov. 9, 2010) (*Levaquin I*). "A conflict exists if choosing the law of one state over the law of another state would be outcome determinative." *Christian*, 763 N.W.2d at 56 (quotation omitted).

Under Minnesota law, a plaintiff is permitted to amend his complaint to add a claim for punitive damages when the Court finds that there is clear and convincing evidence that the defendant acted with deliberate disregard for the rights or safety of others; the clear-and-convincing standard is satisfied "[w]here the evidence is sufficient to permit the jury to conclude that it is 'highly probable' that the defendant acted with deliberate disregard to the rights or safety of others . . . ." *Olson*, 29 F.Supp.2d at 1036 (quotation omitted).  In contrast, Massachusetts does not permit an award of punitive damages absent statutory authority. *Haddad v. Wal-Mart Stores, Inc.*, 914 N.E.2d 59, 74-75 (Mass. 2009) (noting "many states, unlike Massachusetts, allow punitive damages in negligence cases"); *see Citigroup Global Mkts., Inc. v. Salerno*, No. 05-12191 (NMG), 445 F. Supp.2d 124, 126 (D. Mass. 2006) ("[I]t is a well-settled and long established principle that punitive damages may not be awarded under Massachusetts law absent statutory authority."); *Tele-Connections, Inc. v. Perception Tech. Corp.*, No. 88-2365 (S), 1990 WL 180707, at *3 (D. Mass. Nov. 5, 1990) (stating common-law causes of action "cannot be the basis for recovery of punitive damages"); *Santana v. Registrars of Voters of Worchester*, 502 N.E.2d 132, 135 (Mass. 1986) ("Punitive or exemplary damages are not allowed in Massachusetts except under statutory authority.").

Plaintiff did not plead and has not identified any statutory claims under Massachusetts law. *Cf. Frisone v. Bear Stearns & Co.*, No. 82-1439 (MA), 1983 WL 1313, at *5 (D. Mass. Apr. 27, 1983) ("The plaintiff cites no statutory basis for his claim [under Massachusetts law], and has conceded that his cause of action for punitive damages 'would, if upheld, constitute a landmark decision.'"). Because Plaintiff may seek a remedy under Minnesota law not otherwise available to him in his home state, a conflict exists between the laws of Minnesota and Massachusetts. *See Burks*, 639 F.Supp.2d at 1012 ("Because a substantial remedy, punitive damages, is available under Minnesota law but not under Louisiana law, there is therefore a clear conflict between the states' laws.").

"Where an actual conflict between states' laws exists, the Court's second step is to determine if the law of both states may be constitutionally applied to the case." *Id.* (citing *Jepson*, 513 N.W.2d at 469.); *see Levaquin I*, 2010 WL 7852346, at *7.

> The Supreme Court set out the test for constitutionality in [*Allstate Insurance Co. v.*] *Hague*: "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair."

*Jepson*, 513 N.W.2d at 469 (quoting 449 U.S. 302, 312-13, 101 S. Ct. 633, 640 (1981)). But this second step applies "only if the conflicting rules of law are substantive rather than procedural." *Christian*, 763 N.W.2d at 57. *But see Nesladek v. Ford Motor Co.*, 46 F.3d 734, 740 (8th Cir. 1995) (noting "the Minnesota Court of Appeals on at least one occasion has noted its disinclination to classify anything as procedural because of the potential that doing so will encourage forum shopping" (quotation omitted)).

Procedurally, courts of this District apply Minn. § 549.191 in diversity cases to deter forum shopping. *See Kuehn v. Shelcore, Inc.*, No. 3-87-830, 686 F. Supp. 233, 235 (D. Minn.

1988). As the Honorable J. Edward Devitt observed in *Kuehn*: "When faced with the choice between a forum which applies § 549.191 and one which does not, a party might well choose the latter because it provides a tactical, though non-dispositive, advantage." *Id.*; *see Ulrich v. City of Crosby*, No. 5-92-208, 848 F. Supp. 861, 866 n.5 (D. Minn. 1994) (noting "rationale of these decisions [applying Minn. Stat. § 549.191 in diversity cases] related to the need, under the precepts of Federalism, to curtail or prevent forum shopping").

The procedure set forth in Minn. Stat. § 549.191, however, has a substantive component—the moving party "must allege the applicable legal basis under section 549.20 *or other law* for awarding punitive damages in the action." Minn. Stat. § 549.191 (emphasis added); *see In re Levaquin Prods. Liab. Litig.*, No. 08-5743 (JRT), 2010 WL4867588, at *2 (D. Minn. Nov. 23, 2010) (*Levaquin II*) ("The Minnesota punitive damage statute is statutorily constructed in two separate parts: Section 549.191 describes the pleading standard subject to the substantive standard of Section 549.20."). Courts in this District have previously discussed the link between section 549.191's procedure and section 549.20's substantive, deliberate-disregard standard. *See, e.g.*, *Ulrich*, 848 F. Supp. at 866 ("In the Federal Courts of this District, the pleading of a punitive damage claim, under causes of action premised upon the Laws of the State of Minnesota, must generally conform to the requisites of Minnesota Statutes Sections 549.191 and 549.20."); *Zeelan Indus., Inc. v. de Zeeuw*, No. 4-88-736, 706 F. Supp. 702, 705 (D. Minn. 1989) ("Pursuant to Minn. Stat. § 549.191, a plaintiff seeking to assert a claim for punitive damages must make a prima facie showing that plaintiff is entitled to punitive damages under Minn. Stat. § 549.20."); *Levaquin II*, 2010 WL4867588, at *2 ("The pleading standard of the punitive damages statute (§ 549.191) and the substantive section of the statute (§ 549.20) are inextricably linked since a plaintiff can only successfully plead punitive damages under

7

§ 549.191 by demonstrating a prima facie case as outlined by § 549.20."). In those cases, however, a Minnesota plaintiff was present.

Here, Plaintiff is not a citizen of Minnesota; none of the Defendants are incorporated in Minnesota; none of the Defendants utilize Minnesota as their principal place of business; none of the events underlying this suit occurred in Minnesota; and none of the injuries complained of were suffered in Minnesota. In short, none of the parties have significant contacts with Minnesota. *See Burks*, 639 F. Supp.2d at 1012 (stating "it is highly questionable that it would be constitutionally permissible to apply Minnesota law" where "the only contact that Minnesota has with this case is that defendants both transact business in Minnesota").

Section 549.191's procedure is utilized by courts of this District to reduce the influence that a "plaintiff's ability to brandish a claim for punitive damages as a tool for promoting an advantageous settlement or otherwise advancing his claims" may have on his selection of a federal forum. *de Zeeuw*, 706 F. Supp. at 705. By the same reasoning, section 549.191's procedure should not be employed to obtain relief in one forum not otherwise available in another. *Cf. Hughes v. Wal-Mart Stores, Inc.*, 250 F.3d 618, 621 (8th Cir. 2001) ("Absent some relevant connection between a state and the facts underlying the litigation, we fail to see how any important [state] governmental interest is significantly furthered by ensuring that nonresidents are compensated for injuries that occur *in another state*."). The Court cannot ignore the dearth of Minnesota contacts in this case. Minnesota has no discernible interest in this litigation. By using section 549.20's deliberate-disregard standard instead of looking to "other law"—as expressly contemplated by section 549.191—Plaintiff achieves the very advantage courts of this District sought to thwart: the ability to brandish an otherwise unsustainable claim for punitive damages.[2]

---

[2] For purposes of this analysis, the Court assumes—without deciding—that Plaintiff would be able to meet the deliberate-disregard standard under Minn. Stat. § 549.20, subd. 1.

*See de Zeeuw*, 706 F. Supp. at 705; *see also Nesladek*, 46 F.3d at 740 (affirming application of Nebraska law over Minnesota law as application of Minnesota law "does not advance Minnesota's countervailing interest in discouraging forum shopping").

Moreover, even if this Court were to proceed to an analysis of the five factors Minnesota courts use to determine which state's laws to apply, the balance would favor Massachusetts. These factors "are: (1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." *Jepson*, 513 N.W.2d at 470.  The first and third factors are not given much weight in tort cases. *Burks*, 639 F. Supp.2d at 1013; *Levaquin I*, 2010 WL 7852346, at *8; *see also Hughes*, 250 F.3d at 620 ("A federal district court is faced almost daily with the task of applying some state's law other than that of the forum state . . . .").

As for the second factor, "[m]aintenance of interstate order in tort cases is generally satisfied as long as the state whose laws are purportedly in conflict has sufficient contacts with and interest in the facts and issues being litigated." *Nesladek*, 46 F.3d at 739 (quotation omitted). "Evidence of forum shopping or evidence that application of one state's law would promote forum shopping, would be an attempt to evade, and would indicate disrespect for, [the other state's] law.  Minnesota does not encourage forum shopping because it frustrates the maintenance of interstate order." *Schumacher v. Schumacher*, 676 N.W.2d 685, 690-91 (Minn. App. 2004) (quotation omitted); *see also Nesladek*, 46 F.3d at 739 ("In determining the relevance of the maintenance-of-interstate-order factor in a given case, the court may also consider whether or not application of Minnesota law will encourage forum shopping." (quotation omitted)).  This factor strongly favors the application of Massachusetts law given that the significant events underlying this litigation occurred in Massachusetts and applying Minnesota law would provide

9

Plaintiff with a benefit not otherwise available in Massachusetts. *See Hughes*, 250 F.3d at 620-21 ("[W]here a state has little or no contact with a case and nearly all of the significant contacts are with a sister state, the [maintenance-of-interstate-order] factor suggests that a state should not apply its own law to the dispute." (quotation omitted)).

Indeed, this District has been inundated with product-liability cases that, like this one, have little connection, if any, to Minnesota, prompting several judges of this District to make observations similar to those made in *Powell v. I-Flow Corp.*:

> This case is one of thousands of product-liability actions filed in recent years in the District of Minnesota by plaintiffs who have no connection to Minnesota against defendants who have no connection to Minnesota regarding events that did not occur in Minnesota and that had no impact within Minnesota. The vast majority of these actions have been filed in this District because, if they were filed by the plaintiffs in their home states (or almost anywhere else), they would be dismissed under the applicable statutes of limitations.
>
> . . . .
>
> No one can fault the plaintiffs who have brought these actions for taking advantage of the opportunity extended to them under Minnesota law. But such forum shopping nevertheless imposes heavy burdens on this Court and diverts the Court's limited resources away from litigants and cases that have much stronger connections to the District of Minnesota.

No. 10-1984 (PJS/FLN), 711 F. Supp.2d 1012, 1014, 1016 (D. Minn. 2010) (transferring pain-pump litigation to North Carolina); *see also Wytko v. I-Flow Corp.*, No. 10-2210 (MJD/AJB), 2011 WL 290519 (D. Minn. Jan. 27, 2011) (transferring pain-pump litigation to New Jersey); *Martinez v. Breg, Inc.*, No. 10-2775 (ADM/JJK), 2010 WL 4867596 (Nov. 23, 2010) (transferring pain-pump litigation to California); *Kunz v. DJO, LLC*, No. 10-712 (DSD/AJB), 2010 WL 2985719 (D. Minn. July 26, 2010) (transferring pain-pump litigation to Arizona).

On the surface, the fourth factor—advancement of the forum's governmental interests—would seem to favor the use of Minnesota law as "[i]t is hard to conceive of the case where the application of forum law would not advance the forum's governmental interests." *Nesladek*, 46 F.3d at 739.  But, conversely, Massachusetts has an even stronger interest in having the rights of Plaintiff, its citizen, adjudicated pursuant to its own laws as to the injuries arising from events that occurred within its boundaries.  *See Burks*, 639 F. Supp.2d at 1013.  Further, as discussed above, Minnesota also has an interest in deterring forum shopping, an interest that would not be served by applying Minnesota law to a case where the only apparent reason the case was filed in Minnesota was to take advantage of Minnesota law.  *See Nesladek*, 46 F.3d at 740.  Therefore, this factor likewise would strongly favor the application of Massachusetts law and, because both the second and fourth factors point to application of Massachusetts law, the balance of factors would weigh in favor of using Massachusetts law over Minnesota law in this case.[3]

In sum, the inherent difficulty lies with the "mixed" nature of punitive damages under Minnesota law.  Section 549.191 is purely procedural.  But the plain language of the statute informs parties that they must look elsewhere for the "substantive" standard.  *See* Minn. Stat. § 549.191.  Therefore, applying the procedure dictated in section 549.191, this Court concludes Plaintiff has not made a sufficient showing under the applicable law of Massachusetts to warrant leave to amend to include punitive damages.  Plaintiff's motion is denied.

## IV.

Plaintiff has separately moved to amend his Amended Complaint to include a claim under Massachusetts's Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the

---

[3] The Court need not consider the fifth factor—the better rule of law—when the other factors are dispositive.  *See Schumacher*, 676 N.W.2d at 691-92.

conduct of any trade or commerce . . . ." Mass. Gen. Laws Ann. ch. 93A, § 2(a). (Docket No. 88.) The DJO Defendants oppose the motion. (*See* Docket No. 93.) The McKinley-Moog-Curlin Defendants orally joined the opposition of the DJO Defendants at the hearing.

Under the Pretrial Scheduling Order, the deadline for amending pleadings and adding additional parties was December 1, 2010. (Docket No. 27.) Having filed a motion to amend approximately *one year* outside the parameters set forth in the Pretrial Scheduling Order, Plaintiff correctly recognizes that he must make a showing of good cause as to why the deadline should be extended for the late filing:

> Although leave to amend is typically granted liberally under Rule 15(a) of the Federal Rules of Civil Procedure, different considerations apply when a party seeks amendment beyond the deadline set in a pretrial scheduling order. "When a party moves for leave to amend outside the district court's scheduling order, Fed. R. Civ. P. 16(b), not the more liberal standard of Fed. R. Civ. P. 15(a), governs and requires the party to show good cause to modify the schedule." *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 610 (8th Cir. 2011). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Id.* (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716–17 (8th Cir.2008)).

*Smith v. Lurie*, No. 09-3513 (DWF/SER), 2011 WL 5025267, at *1 (D. Minn. Oct. 24, 2011).

Plaintiff argues that the good-cause requirement is met here because (1) the issue of whether Minnesota or Massachusetts law governed his claims first arose in the hearing before the undersigned involving Plaintiff's motion for punitive damages, and (2) Plaintiff brought the instant motion promptly after that hearing. (Docket No. 90 at 4-5.) The fact that the DJO Defendants raised the issue of Massachusetts law indeed suggests that Plaintiff never contemplated asserting a statutory claim under Massachusetts law.

Nonetheless, the Court is not persuaded by Plaintiff's contention that choice-of-law considerations "first arose" at the punitive-damages hearing. (*See* Docket No. 90 at 4.) As

12

previously discussed, all of the relevant events took place in Massachusetts or, at a minimum, outside of Minnesota, *yet* Plaintiff filed suit in Minnesota. The Court is hard pressed to believe that choice-of-law considerations were not immediately apparent at the outset of litigation. As the DJO Defendants point out:

> In his initial Complaint, Plaintiff recognized that he is, and was at all times relevant hereto, a Massachusetts resident, had his surgery performed and pain pump implanted in Massachusetts, and all other relevant medical care occurred in Massachusetts. Therefore, by Plaintiff's own admission, he knew all relevant contacts are with, and all relevant facts occurred in, Massachusetts prior to any discovery undertaken. Plaintiff makes no argument that new facts have been discovered which has led to his undue delay in seeking the amendment. Plaintiff's contention that the issue of whether Massachusetts law may apply first arose at the punitive damages hearing is without factual support. Moreover, if Plaintiff was uncertain as to which state's law would apply at time they filed this action, plaintiff was not prohibited by the Federal Rule of Civil Procedure as Rule 8 permits pleading in the alternative.

(Docket No. 93 at 7 (citation omitted).)

Plaintiff, a non-resident, brought this action in Minnesota, a state with little if any connection, to Plaintiff, his surgery, or his injuries. Such a plaintiff should reasonably be expected to anticipate that a non-resident defendant, hailed to court in such a forum, might raise application of the state's law in which the injuries at issue took place. Plaintiff's contention that choice-of-law considerations are somehow a new issue to this case is unavailing. Plaintiff's motion for leave to add a claim under Massachusetts's Consumer Protection Act is therefore denied.

**V.**

Based on the file, records, arguments and memoranda of counsel, and proceedings herein,

**IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Leave to Assert a Claim for Punitive Damages Against DJO Global, Inc.; DJO, LLC; McKinley Medical LLC; Curlin Medical, Inc.; Moog, Inc.; the Broe Companies, Inc.; and Pat Broe (Docket No. 68) is **DENIED**.

2. Plaintiff's Motion for Leave to Assert a Claim Under Massachusetts's Unfair and Deceptive Trade Practices Statute, M.G.L.A. C.93A (Docket No. 88) is **DENIED**.

Date: February   6th  , 2012                                         *s/ Tony N. Leung*
                                                                     Tony N. Leung
                                                                     United States Magistrate Judge
                                                                     for the District of Minnesota


*Burke v. DJO, LLC et al.*
File No. 10-cv-2209 (JRT/TNL)